# In the United States Court of Federal Claims

No. 15-1189C
Filed: September 14, 2018
NOT FOR PUBLICATION

| | |
|---|---|
| MARINE INDUSTRIAL CONSTRUCTION, LLC, | ) ) ) |
| Plaintiff, | ) ) Motion to Compel; RCFC 26; RCFC 37; |
| v. | ) Motion to Strike; Work-Product Privilege; ) Attorney-Client Privilege. |
| THE UNITED STATES, | ) ) ) |
| Defendant-Counterclaimant. | ) ) |

*Joseph A. Yazbeck, Jr.*, Attorney of Record, *David H. Bowser*, Jordan Ramis, PC, Lake Oswego, OR, for plaintiff.

*Jimmy S. McBirney*, Trial Counsel, *David K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER ON
THE PARTIES' MOTIONS TO COMPEL AND THE
GOVERNMENT'S MOTION TO STRIKE AND SCHEDULING ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, Marine Industrial Construction, LLC ("MIC") seeks to compel the disclosure of certain documents relevant to MIC's Contract Disputes Act claim that are within the possession of the government's expert dredging consultant, Dalton, Olmstead & Fuglevand, Inc. ("DOF"). *See generally* Pl. Mot. The government opposes MIC's motion to compel upon the grounds that the documents requested from DOF have been properly withheld from disclosure under the work-product privilege and the attorney-client privilege. *See generally* Def. Mot. In addition, the government moves to: (1) compel MIC to return or destroy certain documents related to DOF that the government inadvertently disclosed during fact discovery; (2) strike certain

exhibits to MIC's motion to compel; and (3) require MIC to pay the government's reasonable expenses in connection with the parties' motions to compel. *Id.*; *see also* RCFC 26(b)(5)(B); RCFC 37(a)(5). For the reasons set forth below, the Court: (1) **DENIES** MIC's motion to compel; (2) **GRANTS** the government's motion to strike; (3) **GRANTS** the government's motion to compel; and (4) **HOLDS IN ABEYANCE** the government's request that MIC pay its reasonable expenses.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

The parties are currently engaged in fact discovery in this Contract Disputes Act action. MIC filed this lawsuit on October 13, 2015, and the Court subsequently stayed this action, pending the issuance of the contracting officer's final decision ("COD") on MIC's equitable adjustment claim. Order, dated Dec. 8, 2015 (docket entry no. 7); *see generally* Compl.

On January 15, 2016, the United States Army Corps of Engineers ("USACE") obtained approval for a limited source justification to hire DOF as an expert consultant, pursuant to Federal Acquisition Regulation 13.106-1. Yazbeck Decl. at Ex. C at 4-6; *see also* 48 C.F.R. § 13.106-1. On March 2, 2016—approximately five months after this litigation commenced—the government retained the services of DOF. Yazbeck Decl. at Ex. G; *see generally* Compl.

Subsequently, DOF provided the USACE with two reports—a dredging means and methods report and a dredged material report—to address certain aspects of MIC's claim. *See generally* Yazbeck Decl. at Exs. I-J. The USACE's contracting officer issued the COD on April 15, 2016. 2d Am. Compl. at ¶ 40.

During the course of discovery, the government inadvertently produced certain documents related to, among other things, DOF's work under its consulting contract with the USACE. *See* Yazbeck Supp. Decl. at Ex. 20; *see also* Def. Mot. at 1. On June 6, 2018, MIC

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's second amended complaint ("2d Am. Compl."); plaintiff's motion to compel compliance with a subpoena *duces tecum* ("Pl. Mot."); the Declaration of Joseph A. Yazbeck, Jr. ("Yazbeck Decl."); the government's response and opposition to plaintiff's motion to compel and motion to compel the return of privileged material ("Def. Mot."); and the Supplemental Declaration of Joseph A. Yazbeck, Jr. ("Yazbeck Supp. Decl."). Except where otherwise noted, all facts recited herein are undisputed.

issued a subpoena seeking 12 categories of documents from DOF related to DOF's consulting work (the "DOF Documents"). Yazbeck Decl. at Ex. A at 7-8. On June 14, 2018, the government objected to MIC's subpoena upon the grounds that the documents sought were protected from disclosure by the attorney-client privilege and the work-product privilege. *See generally* Yazbeck Decl. at Ex. C.

### B. Procedural Background

MIC filed a motion to compel compliance with the subpoena served on DOF on July 11, 2018. Pl. Mot. The government filed a response and opposition to MIC's motion and a motion to compel MIC to return or destroy certain documents and a motion to strike on August 21, 2018. Def. Mot. On September 4, 2018, MIC filed a reply in support of its motion and a response and opposition to the government's motion to compel. Pl. Resp. On September 11, 2018, the government filed a reply in support of its motion to compel. Def. Reply. The Court resolves these pending motions.

## III. LEGAL STANDARDS

### A. The Work-Product Privilege

The work-product privilege protects against the discovery of documents "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . or agent)." RCFC 26(b)(3)(A); *see also Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) ("Rule 26(b)(3) codifies the work-product doctrine . . . ."). Specifically, this privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The party asserting the work-product privilege bears the burden of demonstrating that the privilege applies and was not waived, *Evergreen Trading, LLC ex rel. Nussdorf v. United States*, 80 Fed. Cl. 122, 127 (2007), and the party must do so by setting forth objective facts supporting the claim rather than mere conclusory statements, *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 455 (2007).

While the work-product privilege protects against the discovery of documents prepared in anticipation of litigation, the fact that documents may have been created in anticipation of litigation, or for trial, does not always create an impenetrable barrier for another party seeking to

obtain the materials through discovery. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 503-04 (2009); *see also* RCFC 26(b)(3)(A)(i)-(ii). For example, a party can waive the work-product privilege either expressly or implicitly in generally the same manner that a party can waive the attorney-client privilege. *See Eden Isle Marina*, 89 Fed. Cl. at 503-04. In addition, even if there is no waiver, documents that would otherwise be protected by the work-product privilege are discoverable in limited circumstances. RCFC 26(b)(3)(A)(i)-(ii). And so, documents prepared in anticipation of litigation may be discovered if the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. *Id.*

This Court has held that "[t]he threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation or was prepared in the ordinary course of business or for other purposes." *Pacific Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 790 (2006) (citations omitted). The Court has also held that "there are a 'variety of approaches' to determine whether a document was created in anticipation of litigation . . . rather than created in the ordinary course of business operations, or for other purposes." *Northrop Grumman Corp. v. United States*, 80 Fed. Cl. 651, 654 (2008) (citing *Pacific Gas & Elec.*, 69 Fed. Cl. at 790). In this regard, the Court has recognized that:

> One approach . . . is to inquire into the 'primary motivational purpose behind the creation of the document.' Another approach is to inquire into whether a document was created because of anticipated litigation, and would not have been prepared, 'but for the prospect of that litigation.'

*Id.* (quoting *Pacific Gas & Elec.*, 69 Fed. Cl. at 791). Under either formulation, the crucial inquiry is whether or not the document was "'prepared in the ordinary course of business or . . . would have been created in essentially similar form irrespective of the litigation.'" *Id.* (quoting *Pacific Gas & Elec.*, 69 Fed. Cl. at 798).

### B.     The Attorney-Client Privilege

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. And so, this privilege "protects the confidentiality of communications between attorney and client made

for the purpose of obtaining legal advice." *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). The party asserting the privilege bears the burden of demonstrating the applicability of the privilege, and that burden is not "'discharged by mere conclusory or *ipse dixit* assertions.'" *Evergreen Trading*, 80 Fed. Cl. at 127 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)); *see also In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450-51 (6th Cir. 1983) (reviewing decisions from various appellate courts on which party bears the burden).

Because "the privilege has the effect of withholding relevant information from the fact-finder, [the privilege] applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000) ("The assertion of privileges is strictly construed . . . ."). And so, the assertion of attorney-client privilege is only proper when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Energy Capital Corp.*, 45 Fed. Cl. at 484-85 (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)).

Similar to the work-product privilege, the party holding the privilege may waive it with regard to specific information when the privilege would otherwise be applicable. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1926 (2016). "If a court determines that a party has waived the privilege with respect to a particular communication, that waiver generally extends to all communications 'relating to the same subject matter.'" *Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 109 (2013) (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).

5

### C.     RCFC 26 And RCFC 37

RCFC 26 addresses the duty to disclose in connection with civil discovery and this rule provides, in relevant part, the following regarding claims of privilege:

> **(B) Information Produced.** If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

RCFC 26(b)(5)(B). RCFC 26 also explicitly prevents disclosure of communications between an attorney and expert witness, unless they: (1) relate to compensation for the expert's study or testimony; (2) identify facts or data the attorney provided and that the expert considered in forming his opinions; or (3) identify assumptions upon which the expert relied. RCFC 26(b)(4)(C). In addition, this rule also provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." RCFC 26(b)(3)(A).

Lastly, RCFC 37 governs motions to compel and this rule specifically addresses the payment of expenses following the resolution of such motions. The rule provides that:

> **(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).** If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>
>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>
>> (iii) other circumstances make an award of expenses unjust.

> **(B) If the Motion Is Denied.** If the motion is denied, the court may issue any protective order authorized under RCFC 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
>
> **(C) If the Motion Is Granted in Part and Denied in Part.** If the motion is granted in part and denied in part, the court may issue any protective order authorized under RCFC 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

RCFC 37(a)(5)(A)-(C).

## IV.   LEGAL ANALYSIS

### A.   The Government Has Appropriately Invoked The Work-Product Privilege

As an initial matter, the government persuasively argues that the DOF Documents are covered by the work-product privilege.  *Evergreen Trading*, 80 Fed. Cl. at 127 (explaining that the party asserting the work-product privilege bears the burden of demonstrating that the privilege applies and was not waived); *see also AAB Joint Venture*, 75 Fed. Cl. at 455 (explaining that the party asserting privilege must do so by setting forth objective facts supporting the claim rather than mere conclusory statements).  And so, the Court must **DENY** MIC's motion to compel.

This Court has held that "[t]he threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation or was prepared in the ordinary course of business or for other purposes."  *Pacific Gas & Elec.*, 69 Fed. Cl. at 790 (citations omitted).  To make this determination, the Court may "inquire into the 'primary motivational purpose behind the creation of the document,'" or "whether a document was created because of anticipated litigation, and would not have been prepared, 'but for the prospect of that litigation.'"  *Northrop Grumman*, 80 Fed. Cl. at 654 (quoting *Pacific Gas & Elec.*, 69 Fed. Cl. at 791).  And so, the crucial inquiry for the Court here is whether the DOF Documents sought in MIC's subpoena have been prepared in the ordinary course of business, or would have been created in essentially similar form irrespective of this litigation.  *Id.*

7

The facts in this case show that the documents at issue have been created primarily for the purpose of assisting the government with this litigation for several reasons. First, the timeline of this litigation makes clear that the USACE decided to retain DOF as an expert consultant in this matter several months after MIC commenced this litigation. In this regard, it is undisputed that the government issued the justification to hire an expert consultant to review MIC's claim in January 2016, three months after this case was filed. Yazbeck Decl. at Ex. C, pages 5-6.

Second, the government's source justification for DOF's consulting contract states that the reason for the authority granted to hire DOF as a consultant is that "this matter is urgent, *as a claim was filed with the Court of Federal Claims in October, 2015* . . . ." Yazbeck Decl. at Ex. C at 4 (emphasis supplied). This justification further states that "[p]urchasing services from [DOF] is necessary because they are the only reasonably available source with the skills and expertise required to provide an expert report that will *adequately support the Government's decision during the impending litigation.*" *Id*. (emphasis supplied). And so, there can be no genuine dispute that USACE hired DOF on March 2, 2016—five months after this litigation commenced—and that the government and DOF were fully aware of the connection between the COD and this litigation. *See generally id.*; Yazbeck Decl. at Ex. G.

In addition, the documents provided to the Court also show that any work that DOF may have performed to assist with the preparation of the COD issued on April 15, 2016, was connected to the ongoing litigation of this case. In its motion to compel, MIC correctly argues that the solicitation for DOF's consulting contract and other documents attached as exhibits to MIC's motion to compel state that the scope of DOF's consulting work includes assisting the government in evaluating information pertinent to the COD. Pl. Mot. at 10-13; *see, e.g.*, Yazbeck Supp. Decl. at Ex. 15, page 8 ("[T]he purpose of this [Performance Work Statement] is to assist the Government in evaluating information pertinent to the [COD] request."); Yazbeck Supp. Decl. at Ex. 18, page 4; Yazbeck Supp. Decl. at Ex. 19, page 4 ("[DOF] was hired by the USACE on March 2, 2016, to provide technical reports on specified topics in support of the COD preparation."); Yazbeck Decl. at Ex. H, page 2 ("DOF['s] report is part of the Contracting Officer Decision"). But, these documents must be read within the context of the government's justification to hire DOF and the timeline for this litigation.

In this regard, there is no dispute that the USACE's contracting officer issued the COD *after* the Court stayed this litigation for the purpose of obtaining a final decision on MIC's equitable adjustment claim. Order, dated Dec. 8, 2015 (docket entry no. 7). The government also correctly argues that the fact that DOF may have worked on the COD does not preclude the government from asserting the work-product privilege with respect to the DOF Documents, if the *primary* motivational purpose for creating those documents was to assist the government in this litigation. Def. Mot. at 11-12.

Because the Court finds that the primary motivational purpose for creating the DOF Documents was to assist the government in this litigation, the Court concludes that the government appropriately invoked the work-product privilege with respect to the DOF meeting minutes, DOF reports, and the other DOF Documents that MIC now seeks. And so, the Court **DENIES** MIC's motion to compel.[2]

### B. MIC Has Not Fully Complied With RCFC 26

The Court also agrees with the government that MIC has not met its obligations under RCFC 26 to return, destroy, or file under seal, any documents that the government inadvertently disclosed, once MIC received notice of the government's privilege assertions. RCFC 26 provides, in relevant part, that:

> **(B) Information Produced.** If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. ***After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has***; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; ***and may promptly present the information to the court under seal for a determination of the claim***. The producing party must preserve the information until the claim is resolved.

RCFC 26(b)(5)(B) (emphasis supplied). It is undisputed that, after the government inadvertently produced certain documents related to DOF's consulting work, the government notified MIC of

---

[2] Because the Court concludes the government has appropriately invoked the work-product privilege with respect to all of the categories of documents sought by MIC in its subpoena to DOF, the Court does not reach the issues of whether certain requested documents are also covered by the attorney-client privilege and whether MIC prematurely seeks expert discovery.

9

its objection to the disclosure of these documents. Def. Mot. at 5-6; Pl. Resp. at 11-13; Def. Reply at 2. A letter to MIC's counsel dated June 14, 2018, also states that the government objects to MIC's subpoena to DOF upon multiple grounds, including attorney-client privilege and work-product privilege. *See generally* Yazbeck Decl. at Ex. C.

MIC acknowledges that, after being notified of the government's privilege assertions, it did not return or destroy the documents that the government inadvertently disclosed. Pl. Resp. at 11-13. MIC, nonetheless, argues that it had no obligation to do so because the parties stipulated to other arrangements regarding the treatment of these documents. *Id.*; *see also* RCFC 29. But, even if true, MIC does not explain why it failed to file these documents under seal when MIC filed its motion to compel, as required by RCFC 26. Pl. Resp. at 11-13; *see also* RCFC 26(b)(5)(B). Given this, the Court finds that MIC has not fully complied with its obligations under RCFC 26. And so, the Court **GRANTS** the government's motion to compel and **GRANTS** the government's motion to strike Exhibits H, I, J, and K to the Yazbeck Declaration.

### C. The Court Holds In Abeyance The Government's Request For Reasonable Expenses

As a final matter, the government has requested that the Court order MIC to pay its reasonable expenses in connection with preparing a response to MIC's motion to compel and the government's cross-motion, pursuant to RCFC 37. *See* Def. Mot. at 16. RCFC 37(a)(5) provides that, if a motion to compel is granted, the Court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. RCFC 37(a)(5)(A). This rule similarly provides that, if the motion to compel is denied, the Court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both, to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. RCFC 37(a)(5)(B). But, RCFC 37(a)(5) also requires that, if a motion to compel is granted, the Court must not order such a payment if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's position was substantially justified; or (3) other circumstances make an award of expenses unjust. RCFC 26(a)(5)(A)(i)-(iii). Similarly, if a motion to compel is denied, the Court must not

order such a payment if the motion was substantially justified, or other circumstances make an award of expenses unjust. RCFC 37(a)(5)(B).

During the September 13, 2018, hearing on the parties' motions, MIC requested the opportunity to further brief the issue of whether it should be required to pay the government's reasonable expenses under RCFC 37. And so, the Court **HOLDS IN ABEYANCE** the remaining issue of whether the Court should grant such relief pending additional briefing by the parties.

### V. CONCLUSION

In sum, the government has shown that it appropriately invoked the work-product privilege with respect to the documents requested in MIC's subpoena to DOF. The undisputed facts in this case also show that MIC did not fully comply with RCFC 26, when it failed to file certain exhibits attached to its motion to compel under seal. And so, for the foregoing reasons, the Court:

1. **DENIES** MIC's motion to compel;
2. **GRANTS** the government's motion to strike;
3. **GRANTS** the government's motion to compel; and
4. **HOLDS IN ABEYANCE** the government's request for reasonable expenses.

It is **FURTHER ORDERED** that:

1. MIC shall **RETURN OR DESTROY** the DOF reports and meeting minutes that the government inadvertently produced during fact discovery on or before **September 21, 2018**.
2. The Clerk is **DIRECTED** to **STRIKE** Exhibits H, I, J, and K to the Yazbeck Declaration (docket entry no. 33).
3. In addition, the Court, with the assistance of the parties, sets the following schedule for filing of the parties' supplemental briefs on the issue of whether MIC should pay the government's reasonable expenses:
    a. On or before **October 1, 2018**, MIC shall file an opening brief;
    b. On or before **October 15, 2018**, the government shall **FILE** a response; and
    c. On or before **October 19, 2018**, MIC shall **FILE** any reply.

4. Lastly, the Court, with the assistance of the parties, modifies the Scheduling Order, dated May 17, 2018, as follows:

    a. Close of fact discovery. **December 13, 2018**

    b. On or before **December 13, 2018,** the parties shall **FILE** a joint status report advising the Court of the status of fact discovery and proposing a schedule for further proceedings in this matter, including, if warranted, a schedule for expert discovery.

Each party to bear its own costs.

**IT IS SO ORDERED.**

                                    s/ Lydia Kay Griggsby
                                    LYDIA KAY GRIGGSBY
                                    Judge