# In the United States Court of Federal Claims

No. 15-1189
(Filed:  29 December 2020)

*****************************************

| | |
|---|---|
| MARINE INDUSTRIAL CONSTRUCTION, LLC,　　　　　　　　* | |
| 　　　　　　　　　　　　　　* | |
| 　　　　　　　Plaintiff,　　* | Motion to Strike; Objection to Evidence; |
| 　　　　　　　　　　　　　　* | Authentication of Evidence; FRE 901; |
| v.　　　　　　　　　　　　* | Lay Witness Testimony; Expert Witness |
| 　　　　　　　　　　　　　　* | Testimony; FRE 701; Designating Witness |
| THE UNITED STATES,　　　* | as Expert. |
| 　　　　　　　　　　　　　　* | |
| 　　　　　　　Defendant.　* | |
| 　　　　　　　　　　　　　　* | |

*****************************************

## ORDER

**HOLTE, Judge**

　　　　Marine Industrial Construction, LLC ("MIC" or "plaintiff") accuses the government of wrongful termination for default of a contract.  The government counterclaims for costs related to the termination of the contract.  The Court bifurcated the motions contained within the cross-motions for summary judgment to address four issues the parties raised prior to adjudicating the summary judgment motions.  This Order decides only the four issues:  (1) plaintiff's motion to strike the government's objection as untimely; (2) plaintiff's objection to certain exhibits cited in the government's summary judgment motions for lack of authentication; (3) the government's objection to a witness's testimony as inadmissible lay witness opinion; and (4) plaintiff's motion to alternatively designate the witness as an expert witness.  For the reasons set forth below, plaintiff's motion to strike the government's objections is denied.  Plaintiff's objection to the government's exhibits for lack of authentication is denied.  The government's request the Court disregard alleged inadmissible statements is granted as to certain sections the government calls into question.  Plaintiff's motion to designate its witness as an expert is denied.

## I.　　Factual and Procedural History

### A.　　Factual History[1]

---

[1] All facts in this section are taken from the appendix to the government's cross-motion for summary judgment and are cited in the government's cross-motion's Statement of Undisputed Facts, unless stated otherwise.  *See* Def.'s Cross-MSJ; RCFC 56(a) (requiring a movant for summary judgment to show "there is no genuine dispute as to any material fact.").

On 25 July 2014, the U.S. Army Corp of Engineers ("USACE" or "the government") issued Solicitation W912DW-14-B-0008 ("the solicitation"), for hydraulic dredging at Quillayute River Waterway, La Push, Washington. Def.-Counterclaimant's Opp'n to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Def.'s Cross-MSJ"), ECF No. 83 at 3 (citing Appendix to Def.'s Cross-MSJ ("App'x") at 131–280 (Contract, FY14 Maintenance Dredging Quillayute River Waterway, La Push, Washington, Contract Number W192DW-14-C-0024)). The solicitation warned against dangerous weather conditions and various debris in the dredging area. *Id.* at 3–5 (citing App'x at 165, 193, 263, 273, 282 (the solicitation)). The solicitation also required bidders to perform a site visit to inspect "the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site." *Id.* at 5 (citing App'x at 165 (the solicitation)). Plaintiff did not perform a site visit to inspect surface and subsurface materials, although this was its "usual practice." *Id.* (citing App'x at 405, 29:9–11 (deposition of Michael Eakin (excerpts) (stating "nobody from MIC did a site visit prior" to plaintiff submitting its bid)); 356–57, 22:22–23:9 (deposition of Joseph Bernert (excerpts) (confirming plaintiff's "usual practice" is to "walk a job"))). Plaintiff also did not review bidder inquiries in the solicitation, although it usually did so. *Id.* at 6 (citing App'x at 314–16, 121:19–123:12 (deposition of Michael Harrison (excerpts) (testifying reviewing the bidder inquiries "most likely" would have "impacted [his] decision to either make the bid or how much [he] bid")); 359, 25:2–13 (deposition of Joseph Bernert (excerpts) (testifying plaintiff would "usually look at bidder inquiries that come in during the solicitation"))).

Plaintiff won the solicitation by submitting the lowest bid; the government sent plaintiff a letter confirming its bid in writing, further describing the material to be removed, and warning of debris. *Id.* at 7–8 (citing App'x at 1–130 (contract); 449 (USACE letter to MIC seeking verification of bid (advising plaintiff its bid was "significantly lower than all other bids," asking it to "verify its bid in writing" and check for errors, and describing debris))). Plaintiff moved ahead without adjusting its submission. *Id.* at 9 (citing App'x at 295, 66:6–17 (deposition of Michael Harrison (excerpts)); 397, 36:11–37:3 (deposition of David Bernert (excerpts)); 410, 40:9–14 (deposition of Michael Eakin (excerpts))). The government awarded plaintiff the contract on 12 September 2014. *Id.* (citing App'x at 413 (deposition of Michael Eakin (excerpts))). Plaintiff provided its final submittal on 10 November 2014; this was more than a month after the 8 October 2014 deadline. *Id.* at 12 (citing App'x at 423–24, 72:20–73:21 (deposition of Michael Eakin (excerpts)); 525 (FY2014 Dredging Project Submittal Register)). Plaintiff experienced further delays related to problems with its equipment, including a faulty crane and dredging pumps. *Id.* at 13–15 (citing App'x at 485–86 (MIC internal email regarding La Push project failures); 501 (MIC internal email regarding equipment issues)). More delays ensued when floating logs damaged plaintiff's discharge pipes. *Id.* at 15–16 (citing Pl.'s MSJ at 17–20; App'x at 311–13, 114:20–116:15–21 (deposition of Michael Harrison (excerpts)); 419, 66:19–25 (deposition of Michael Eakin (excerpts))).

On 13 January 2015, the government issued a cure notice. *Id.* at 19 (citing App'x at 508 (USACE cure notice letter to MIC)). Plaintiff initially responded on 21 January 2015 with a list of actions it was taking to improve production, and it followed up the next day alleging a differing site condition. *Id.* (citing App'x at 509–10 (MIC letter to USACE responding to cure notice); 511–17 (MIC letter to USACE labeled Serial Letter 0001)). This allegation was related

to unexpected debris in the boat basin but said nothing about weather or clay content.  *Id.* (citing App'x at 511–17 (MIC letter to USACE labeled Serial Letter 0001)).  Plaintiff continued to perform behind schedule, and the government issued a show cause letter on 29 January 2015.  *Id.* at 20 (citing App'x at 518–19 (USACE letter to MIC inviting MIC to show cause why USACE should not terminate the contract for default)).  The government ultimately terminated the contract for default on 27 February 2015.  *Id.* (citing App'x 520–21 (USACE letter terminating the contract for default)).  This was 156 days into the project and a day short of the deadline; plaintiff had dredged 13,011 cubic yards of the required 79,000.  *Id.* (citing Second Amended Complaint, ECF No. 20, Ex. 2 at 8, ¶22).

### B.   Procedural History

On 13 October 2015, plaintiff sued the government for breach of contract, arguing the government wrongfully terminated the contract because plaintiff's delay was excusable.  *See* Compl., ECF No. 1 at 1–3.  Plaintiff requested the Court "[c]onvert[] the [government's] termination for default to a termination for convenience" and "award[] [plaintiff] fees pursuant to the Equal Access to Justice Act."  *Id.* at 3.  Plaintiff filed a first amended complaint on 1 July 2016 and sought "$638,260.81 in additional costs caused by USACE's breach of warranty, the differing site conditions encountered, and USACE's failure to disclose its superior knowledge" plus interest and fees, along with additional time to perform the contract.  *See* First Amended Complaint, ECF No. 10 at 7.  On 16 January 2017, plaintiff filed a second amended complaint. *See* Second Amended Complaint, ECF No. 20.  This complaint asserts three counts:  (1) breach of contract for denial of valid claim, requesting the Court find plaintiff encountered 117.5 days of excusable delay and award plaintiff $638,260.81 and "an additional 80.5 days to complete the work;" (2) breach of contract for improper termination of default, requesting the Court convert the government's termination for default "to a termination for convenience;" (3) breach of contract for improper demand of payment, requesting the court find the government's demand for $1,031,751.50 wrongful and set it aside.  *Id.* at 7–9.  On 6 July 2018 the government filed a first amended answer to plaintiff's second amended complaint and asserted a counterclaim for the $1,031,751.50 plus interest for "excess reprocurement costs, administrative costs and liquidated damages demanded by the contracting officer's final decision . . . ."  First Amended Answer to Second Amended Complaint and Counterclaim, ECF No. 31 at 9.  On 13 August 2018 plaintiff answered the government's counterclaim.  *See* Pl.'s Answer to Def.'s Countercl., ECF No. 40.  Fact discovery closed on 18 May 2019.  *See* Order, ECF No. 66.

On 10 June 2019 the parties filed a joint status report stating plaintiff "has retained an expert witness in this matter, [and the government] will retain a rebuttal expert if necessary." Joint Status Report, ECF No. 69 at 1.  The parties proposed an amended schedule setting deadlines for expert witness discovery and summary judgment briefing.  *Id.* at 1–2.  On 12 June 2019 the court adopted the parties' proposed expert witness discovery and summary judgment briefing schedule, requiring plaintiff to provide the government with its expert reports on or before 9 September 2019, the government to provide plaintiff with any rebuttal expert reports on or before 8 November 2019, and closing expert discovery on 6 December 2019.  Scheduling Order, ECF No. 70.  On 29 July 2019 this case was transferred to the undersigned Judge.  *See* Order, ECF No. 71.  On 13 December 2019 the government submitted an unopposed motion for enlargement of the briefing schedule, and the Court granted the motion on 18 December 2019.

*See* Def.'s Unopposed Mot. for Enlargement of Briefing Schedule, ECF No. 73; Order, ECF No. 74. On 30 March 2020, the parties submitted a joint motion seeking an extension of time for the summary judgment briefing schedule. *See* Joint Mot. for Enlargement of Briefing Schedule, ECF No. 75. The parties jointly requested "[t]he deadline for oppositions to, or cross-motions for, summary judgment and any responses to motions for adverse inferences based on failure to preserve documents be extended . . . to June 3, 2020." *Id.* at 1. On 2 April 2020, the Court adopted the parties' jointly proposed schedule for summary judgment briefing. *See* Order, ECF No. 76.

Plaintiff moved for summary judgment on 4 May 2020 on the three counts in its second amended complaint. *See* Mot. for Summ. J., ECF No. 79. Also on 4 May 2020 plaintiff supplemented its motion for summary judgment with two declarations and various attached exhibits. *See* Decl. of David H. Bowser in Support of Pl.'s Mots. for Summ. J., ECF No. 80 and Decl. of Joseph Bernert in Support of Pl.'s Mots. for Summ. J., ECF No. 81 ("Mr. Bernert's Declaration" or "Declaration of Mr. Bernert"). On 3 June 2020, the government filed an objection to inadmissible evidence regarding statements in the two declarations plaintiff offered in support of its motion for summary judgment. *See* Def.-Counterclaimant's Objs. to Inadmissible Evidence Offered in Support of Pl.'s Mot. for Summ. J. ("Def.'s Objs."), ECF No. 82. The government objected to parts of the Declaration of Joseph Bernert, vice president and co-owner of plaintiff, ECF No. 81, and Exhibit H to the Declaration of Joseph Bernert, ECF No. 81-1.[2] *Id.* The government objected to certain of Mr. Bernert's statements and alleged they were based on information contained in academic literature, hearsay not within the record, and allegations beyond his personal knowledge. *Id.* The government also objected to Exhibit H as inadmissible hearsay not within any exception and to parts of Exhibit H as containing inadmissible lay witness opinion. *Id.* On 4 June 2020, the government filed a cross-motion for summary judgment on the three counts in plaintiff's second amended complaint and the counterclaim in its first amended answer. *See* Def.'s Cross-MSJ at 26, 46.

On 17 June 2020, plaintiff filed a response to the government's objections, which requested the Court strike the government's objections to its declarations as untimely, defended Mr. Bernert's testimony as proper Rule 701 lay witness opinion, and, alternatively, moved to designate Mr. Bernert as an expert witness. *See* Pl.'s Mot. Strike Def.'s Objections as Untimely, Opp'n in Resp. to Def.'s Objs. to Inadmissible Evidence Offered in Support of Pl.'s Mots. for Summ. J., and Alternative Mot. to Designate Expert ("Pl.'s Mot. Strike Def.'s Objs."), ECF No. 84. On 24 June 2020, the government replied in support of the timeliness of its objections, argued Mr. Bernert should not be able to give lay testimony, and stated it was too late in the proceedings for plaintiff to declare Mr. Bernert an expert witness. *See* Def.-Counterclaimant's Reply in Support of Objs. to Inadmissible Evidence Offered in Support of Pl.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. 86. On 27 June 2020, plaintiff replied in support of its motion for summary judgment and in response to the government's motion for summary judgment. Pl.'s Consolidated Rep. in Support of Its Mots. for Summ. J. and Resp. Against Def.'s Mots. for

---

[2] The government objected to "Exhibit H to the Declaration of David Bowser, Dkt. No. 80" on the first page of its objection brief, but Item II on page 2 of the brief is directed to "Declaration of David Bowser, Exhibit H, Dkt. No. 81-H)." Def.'s Objs. at 1–2. Exhibit H is attached to the Declaration of Joseph Bernert, ECF No. 81 on the CM-ECF docket. The government clarified during oral argument it made an error confusing ECF No. 81 with ECF No. 80. *See* Tr. at 40:14–41:2.

Summ. J. ("Pl.'s Reply"), ECF No. 87.  Plaintiff also argued the Court should not consider the government's attachments and exhibits at the summary judgment stage because the government had not authenticated any of the attachments to its motions.  *Id.* at 2.

On 3 August 2020, the Court held a telephonic status conference in this matter.  *See* Scheduling Order, ECF No. 92.  As the parties' counsel agreed during the call, the Court bifurcated the motions contained within the cross-motions for summary judgment and addressed the four pending summary judgment–related issues prior to the summary judgment motions. Order, ECF No. 93.  On 23 September 2020, the Court held oral argument on the four issues. *See* Oral Argument Transcript ("Tr."), ECF No. 96.  Following oral argument, the Court ordered plaintiff to submit a supplemental brief "fully explaining why the government's attachments and exhibits lack required authentication, not[ing] specifically which documents plaintiff disputes (with document description and ECF page identification), and provid[ing] citations to legal authority regarding what requirements the government fails to comply with."  Order ("Suppl. Br. Order"), ECF No. 94.  Plaintiff filed a supplemental brief on 1 October 2020.  *See* Pl.'s Suppl. Br. in Supp. of Its Consolidated Reply in Supp. of Its Mots. for Summ. J. and Resp. Against Def.'s Mots. for Summ. J., ECF No. 97.  The government filed a response to plaintiff's supplemental brief and a declaration from its counsel on 8 October 2020.  *See* Def.- Counterclaimant's Resp. to Pl.'s Suppl. Br. Objecting to Evidence ("Def.'s Supp. Br."), ECF No. 98; Declaration of Jimmy S. McBirney ("Def.'s Supp. Decl."), ECF No. 99.

## II.    Parties' Arguments

The Court bifurcated four issues from the parties' cross-motions for summary judgment. *See* Order, ECF No. 93.  The four issues are:  (1) plaintiff's motion to strike the government's objection filed on 3 June 2020 as untimely, *see* Pl.'s Mot. Strike Def.'s Objs.; (2) plaintiff's objection to certain exhibits cited in the government's summary judgment motions for lack of authentication, *see* Pl.'s Reply and Pl's Supp. Br.; (3) the government's objection to Mr. Bernert's testimony as inadmissible lay witness opinion, *see* Def.'s Objs.; and (4) plaintiff's motion to alternatively designate Mr. Bernert as an expert witness, *see* Pl.'s Mot. Strike Def.'s Objs.

### A.    Timeliness of the Government's 3 June 2020 Objection

Plaintiff argues the deadline for the government's 3 June 2020 objection was 1 June 2020.  Pl.'s Mot. Strike Def.'s Objs. at 1.  Plaintiff bases this earlier date on "the default 28 days that is imposed under Rule 7.2(b)(1) for matters related to . . . responses and objections filed under Rule 56."  Tr. at 5:14–24.  Plaintiff argues the Court's 2 April 2020 Order only extended the default deadline from 1 June 2020 to 3 June 2020 for the government's "cross-motion for summary judgment and any responses to motions for adverse inferences," but not for "objections to . . . inadmissible evidence."  *Id.* at 6:10–15.

The government argues plaintiff ignores "the Court's April 2, 2020, scheduling order that adopted the parties' jointly proposed briefing schedule and set June 3, 2020, as the deadline for cross-motions for summary judgment."  Def.'s Reply at 2.  The government explains the Court's 2 April 2020 Order "covered the deadlines of the objections as well" because "logically, when it

stated a deadline for the Government's summary judgment motion, that would include any other filings that were part and parcel with that summary judgment motion, such as objections to evidence." Tr. at 8:4–14. The government also observes plaintiff does not allege any prejudice resulting from the government's date of filing its objections. *Id.* at 8:14–19.

**B.      Plaintiff's Argument the Government's Exhibits Lacked Necessary Authentication**

On 27 June 2020 plaintiff raised for the first time—in its reply to the government's responsive summary judgment motion—concern the government "did not supply any declaration with its motions or responses. This means that every document that was attached to its motions has not been authenticated in any manner." Pl.'s Reply at 2. Plaintiff did not file an objection to the government's proffered evidence. *See id.* Plaintiff asks the Court to "not consider any document that has not been authenticated because there is no foundation provided." *Id.* at 2.

Plaintiff maintains "[t]he requirement for authentication comports with basic authority regarding the use of records for summary judgment." Pl.'s Supp. Br. at 2. Plaintiff argues "[t]o be considered on summary judgment, however, documents must, if challenged, be authenticated and admissible." *Id.* (emphasis omitted). Plaintiff further argues "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* at 2 (quoting FRE 901(a)). Plaintiff identifies 12 documents "for which authentication is an open issue." *Id.* at 3.

The government's response to plaintiff's supplemental brief asks the Court to limit plaintiff's objection "to the specific objection made in its prior briefing—namely, that the United States is required to provide an attorney declaration authenticating its proffered evidence." Def.'s Supp. Br. at 3. The government asserts "any other form of objection to the documents MIC now identifies . . . should be deemed waived." *Id.* According to the government, "FRE 901(a) requires that the government make only a prima facie showing of authenticity," such that a reasonable finder of fact "could find in favor of authenticity or identification." *Id.* at 4. (internal citation omitted). The government argues plaintiff's authentication objections lack merit because "there is no genuine question as to the documents' authenticity." *Id.* The government concurrently filed a declaration from its counsel "which mirrors the authenticating language utilized in [plaintiff's] attorney declarations purporting to authenticate [plaintiff's] proffered summary judgment evidence." *Id.* at 6; *see* Def.'s Supp. Decl. The government argues its counsel's declaration "authenticates . . . each of the twelve appendix items that [plaintiff] now objects to" and certifies each of the 12 documents is a "true and correct copy" of the original document. Def.'s Supp. Br. at 6.

**C.      Admissibility of Mr. Bernert's Testimony**

The government moved to strike certain statements in Mr. Bernert's Declaration as inadmissible under RCFC Rule 37(c)(1) for the resolution of the parties' cross-motions for summary judgment. *See* Def.'s Objs. at 1 (citing RCFC 56(c)(4)). The government objects to Paragraph 4E in Mr. Bernert's Declaration, which contains "allegations of fact beyond Mr. Bernert's personal knowledge, purportedly based on academic literature" and "modeling Mr.

Bernert purportedly developed" to estimate the project site's stream flow.  *Id.* at 1–2.  The government argues the statements purporting to relay information contained in academic literature are, under FRE 801(c), hearsay not within any exception.  *Id.* at 2.  The government also objects to Paragraphs 5–12 of Mr. Bernert's Declaration, which "all consist of allegations of fact beyond Mr. Bernert's personal knowledge, purportedly based on documents attached as Exhibits L–S . . . ."  *Id.*  The government asserts the statements of Paragraphs 5–12 "purporting to relay information contained in Exhibits L–S are hearsay not within any exception."  *Id.* (citing FRE 801 (c)).  The government argues Mr. Bernert's interpretation or extrapolation of information in these documents is improper lay witness opinion under Rule 701(a) and (c).  *Id.*

The government further objects to Exhibit H in the Declaration of Mr. Bernert, ECF No. 81-1, as impermissible hearsay.  *See* Def.'s Objs. at 2–3 (citing FRE 801(c)).  The government argues "Exh. H also contains purported analysis of weather patterns and sediment content that is not based upon the personal knowledge of plaintiff or of the individual who has verified the responses (Joseph Bernert)."  Def.'s Objs. at 3.

Plaintiff argues the government waived its objection to Paragraph 4E of the Declaration of Mr. Bernert ("Paragraph 4E") by using the information to support its own motion for summary judgment.  Pl.'s Mot. Strike Def.'s Objs. at 1.  Plaintiff also argues Paragraph 4E of the Declaration of Mr. Bernert is admissible lay opinion.  *Id.* at 2.  Plaintiff states Mr. Bernert, "as part of his position, and because he had specialized training, . . . investigated the available flow data."  *Id.* at 8.  Plaintiff also defends the admissibility of Paragraphs 5–12 of the Declaration of Mr. Bernert as admissible lay opinion because "Mr. Bernert, due to his position in experience [within plaintiff's business], conducted an investigation into delay caused to [plaintiff] from the unusually severe weather."  *Id.* at 9–10.  Plaintiff additionally states summary judgment declarations are exempt from hearsay exclusions and contends Exhibit H is admissible as either first-hand information or admissible lay opinion.  *Id.* at 10.

The government argues in response there is no authority for plaintiff's assertion the government waived its objection to plaintiff's proffered evidence "by addressing the substance of that evidence."  Def.'s Reply at 3.  The government further states "Mr. Bernert's proffered opinions, however, are neither based on his personal knowledge, nor limited to 'business operations and industry practices,' and are 'based on scientific, technical, [and] other specialized knowledge.'"  *Id.* at 5.  The government objects to plaintiff's characterization of Exhibit H as a summary judgment declaration exempt from hearsay exclusions because "MIC cites no authority to support its attempt to circumvent FRE 801(c) by 'incorporating' inadmissible discovery responses into a summary judgment declaration."  *Id.* at 6.

### D.    Motion to Designate Mr. Bernert as an Expert Witness

Plaintiff alternatively moves to designate Mr. Bernert as an expert witness.  Pl.'s Mot. Strike Def.'s Objs. at 11.  Plaintiff argues its motion meets all four of the factors another judge on this court and other federal courts considered in determining whether "good cause" exists to modify a schedule under Rule 16 to accommodate adding an expert witness.  *Id.* at 11 (citing *Sys. Fuels, Inc. v. United States*, 111 Fed. Cl. 381, 383 (2013)).  According to plaintiff:  (1) "the reason MIC did not designate Mr. Bernert as an expert as [sic] it had a reasonable belief,

supported by [the government's] contracting practice and case law, that Mr. Bernert would be able to offer his lay opinions under FRE 701;" (2) Mr. Bernert's testimony is relevant to "central issues to MIC's claims and defenses;" (3) the government "will not be prejudiced by allowing the testimony" because the government had ample time to review Mr. Bernert's testimony and deposed him; and (4) "to the extent [the government] would like to designate their own expert, . . . they can be allowed to designate one . . . [and] a counter 'expert' should be readily available." *Id.* at 11–12.

The government urges the Court to deny plaintiff's motion under the four factors the court in *System Fuels* applied, arguing: "(1) MIC was well aware that the testimony it now seeks to introduce through Mr. Bernert required a qualified expert; and (2) even if MIC had not been so aware, MIC's misapprehension of law cannot justify re-opening expert discovery at such a late stage in the proceedings, particularly after the parties have filed motions for summary judgment." Def.'s Reply at 7. The government explains plaintiff previously retained an expert and thus prompted the parties to file the joint status report on 10 June 2019. *Id.* at 8; *see also* Joint Status Report, ECF No. 69 at 1 ("MIC has retained an expert witness in this matter, the US will retain a rebuttal expert if necessary."). Then, "on the day MIC's expert report was due, counsel for MIC informed counsel for the United States that MIC's expert had declined to provide a report." Def.'s Reply at 8. The government argues for "over nine months" after "MIC's retained expert's withdrawal," "MIC did not seek an extension of the agreed upon expert discovery deadlines to attempt to retain a new expert, nor did MIC seek to offer Mr. Bernert as an expert . . . ." *Id.* at 8–9.

## III.   Timeliness of the Government's 3 June 2020 Objection

The government filed an objection on 3 June 2020 requesting the Court ignore certain evidence plaintiff cited in its summary judgment motion for the purposes of resolving the cross-motions for summary judgment. *See* Def.'s Objs. at 1. Plaintiff moves to strike the government's objection as untimely and argues the government should have filed its motion by 1 June 2020, according to "the default 28 days that is imposed under Rule 7.2(b)(1) for matters related to . . . responses and objections filed under Rule 56." Tr. at 5: 21–24; *see also* Pl.'s Mot. Strike Def.'s Objs. at 1. The government argues plaintiff has no basis to encourage the Court to apply the ECF-generated due date based on the rule's default 28 days because this would ignore both the parties' joint motion for extension of time and the Court's order setting 3 June 2020 as the deadline for filing a responsive summary judgment motion. Def.'s Reply at 2. Plaintiff's counsel argues the Court's order extended the deadline to 3 June 2020 for summary judgment motions and does not apply to objections to inadmissible evidence. *See* Tr. at 6:10–15.

Rule 7.2(b) states the Court's default summary judgment filing deadline requires "[a] response to [a summary judgment] motion[] must be filed within 28 days after service of the motion." RCFC 7.2(b). The Court may amend its schedule by order. RCFC 7.2(a)(1) ("Unless otherwise provided in these rules or *by order of the court*, a response or an objection to a written motion must be filed within 14 days after service of the motion.") (emphasis added). Another judge on this court explained the standard filing deadlines in RCFC 7.2 "appl[y] only if the filing of a response is not 'otherwise provided in these rules or by order of the court.'" *Sharpe v. United States*, 112 Fed. Cl. 468, 472 n.2 (2013) (quoting RCFC 7.2(a)(1)). "[T]he power

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 255–56 (1936). Counsel for plaintiff explained the Court's power over its schedule at oral argument: "the general section, 7.2, indicates that the deadlines apply unless otherwise provided in these rules or by order of the Court." Tr. at 5:25–6:2.

Plaintiff provided no basis for its argument the Court should apply the ECF-generated due date based on the Rule 7.2's default 28 days when both parties agreed to 3 June 2020 as the deadline for the government to file responses to plaintiff's motion for summary judgment. *See* Joint Mot. for Enlargement of Briefing Schedule at 1. The parties jointly requested "[t]he deadline for oppositions to, or cross-motions for, summary judgment and any responses to motions for adverse inferences based on failure to preserve documents be extended from May 1, 2020 to June 3, 2020." *Id.* The parties explained they requested "the Court extend the briefing deadlines in this case so as to enable the parties to fully brief the relevant legal and factual issues in this case." *Id.* at 2. The parties did not request any deadlines remain at Rule 7.2's default 28 days, and the parties did not ask the Court to set the deadlines for objections differently than the deadlines for briefing. The Court ordered 3 June 2020 as the new deadline for the government to respond. Order, ECF No. 76 at 1. Plaintiff provides no reason, and does not cite any rule, for why the Court's 2 April 2020 Order's extension of a deadline for filing a summary judgment motion would not also extend the deadlines for other filings tied with the summary judgment motion, such as objections to evidence. Plaintiff also notably failed to argue prejudice from the parties' disagreement over the deadline. Plaintiff's effort to exclude the government's objection from plaintiff's jointly requested two-day extension contradicts its past support for "enabl[ing] the parties to fully brief the relevant legal and factual issues in this case." Joint Mot. for Enlargement of Briefing Schedule at 2. The adversarial process in civil litigation furthers justice; plaintiff's effort here to disagree with a previously agreed upon time extension frustrates it. The government's objection is timely filed because the government filed it by the deadline the parties agreed to and the Court ordered—3 June 2020. RCFC 7.2(a)(1); *Sharpe v. United States*, 112 Fed. Cl. at 472 n.2 (2013).

## IV.   Plaintiff's Objection Regarding Authentication of the Government's Exhibits

On June 3, 2020, the government filed its cross-motion for summary judgment and objection to plaintiff's evidence. *See* Def.'s Cross-MSJ; Def.'s Objs. On 27 June 2020, plaintiff filed its response to the government's cross-motion for summary judgment. *See* Pl.'s Reply. Plaintiff did not separately file any objections to the government's evidence. Plaintiff did, however, include a paragraph stating: "USACE did not supply any declaration with its motions or responses. This means that every document that was attached to its motions has not been authenticated in any manner. As such, the Court should not consider any document that has not been authenticated because there is no foundation provided." Pl.'s Reply at 2.

Briefing on the parties' respective motions for summary judgment—including all related evidentiary objections—concluded on 10 July 2020. *See* Order, ECF No. 76. The Court bifurcated four issues from the parties' cross-motions for summary judgment and heard arguments on the parties' respective evidentiary objections on 23 September 2020. *See* Order, ECF No. 93. During oral argument, plaintiff was unable to cite any document it disputed the

authenticity of. *See* Tr. at 29:11–19. The Court issued a post–oral argument order allowing plaintiff to submit supplemental briefing supporting its lack of authentication objection. *See* Suppl. Br. Order. Plaintiff identified 12 documents "for which authentication is an open issue" in its supplemental brief filed on 1 October 2020. Pl.'s Suppl. Br. at 6–8. The government responded to plaintiff's supplemental brief on 8 October 2020 and concurrently filed a declaration from its counsel of record to authenticate the 12 documents plaintiff objected to. Def.'s Suppl. Br. at 6.

### A.    Legal Standard

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). A party asserting the evidence must present "sufficient evidence from which a reasonable finder of fact could conclude that . . . [the evidence was] authentic." *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 869, 873 (Fed. Cir. 2014). "The court may consider as admissible evidence [the party's evidence] if the [evidence is] properly authenticated pursuant to Rule 901 of the Federal Rules of Evidence." *Kersavage v. United States*, 36 Fed. Cl. 441, 445 (1996). "To satisfy FRE 901, the [party] must provide evidence 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Id.* (citing FRE 901).

While the Federal Circuit has not ruled on the standard FRE 901(a) requires for authentication, another judge on this court followed the D.C. Circuit in holding the standard for authentication requires "the possibilities of misidentification and adulteration must be eliminated, not absolutely, but as a matter of reasonable probability." *Alpha I, L.P. v. United States*, 93 Fed. Cl. 280, 293–294 (2010) (citing *United States v. Haldeman*, 559 F.2d 31, 107 (D.C. Cir. 1976)). The court in *Alpha I, L.P.* also noted the Tenth Circuit "rejected the adopt[ion] of 'an inflexible [foundation] criteria'" for authentication and ruled the trial court should have flexibility to determine whether certain evidence may be authenticated. *Id.* at 294 (citing *United States v. Jones*, 730 F.2d 593, 597 (10th Cir. 1984)). In *Alpha I, L.P.*, plaintiffs moved to strike transcripts of a conversation because the records had not been authenticated. *Id.* at 295. The court in *Alpha I, L.P.* admitted the transcripts because "[d]efendant has adequately supported its contention [with information in the depositions] that the transcripts are substantially authentic records of statements and may therefore be relied on by the court at the summary judgment stage." *Id.*

Rule 901(b) provides examples of how to meet the authentication requirement in Rule 901(a), including "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be." FRE 901(b)(1). This court has accepted the language "a true and correct copy" of the original source to satisfy the requirement of Rule 901(a). *Grand Acadian, Inc. v. United States*, 87 Fed. Cl. 193, 204–05 (2009) (admitting plaintiff's evidence with an affidavit from plaintiff's president stating he has "reviewed the Site Plan . . . , and declare[s] that it is a true and correct copy of the Site Plan provided to [him]").

### B.    Analysis

- 10 -

Plaintiff notes "the court may consider as admissible evidence [the party's evidence] if the [evidence is] properly authenticated pursuant to Rule 901 of the Federal Rules of Evidence," and "to satisfy FRE 901, the [party] must provide evidence 'sufficient to support a finding that the matter in question is what its proponent claims.'" Pl.'s Suppl. Br. at 5 (citing *Kersavage* 36 Fed. Cl. 441, 445 (1996) (internal citation omitted)). The government argues Rule 901(a) requires the government to "make only a prima facie showing of authenticity" before the finder of fact decides "the probative force of the evidence offered." Def.'s Supp. Br. at 4 (citing *United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989) (internal citation omitted)).

The government explains, of the 12 exhibits plaintiff objected to, nine are "either (1) part of the solicitation [of the contract in dispute], or (2) emails to or from MIC personnel that were provided to both MIC and the Government by a third party, after MIC spoilated the copies sent or received by MIC's personnel." Def.'s Supp. Br. at 3–4. The other three documents "are all USACE records, all but one of which were produced in this litigation years ago." *Id.* at 6. Plaintiff used one of the disputed documents, "the bidder inquiry contractor report," in its summary judgment briefing, where it did "not raise any question or dispute as to the inquiries' content." *Id.* at 4. The documents plaintiff objects to do not risk, "as a matter of reasonable probability," misidentification and adulteration, and plaintiff failed to specifically dispute the content of any of the documents or assert where or how the documents were adulterated. *See Homeland Housewares*, 581 F. App'x at 873; *Alpha I, L.P.*, 93 Fed. Cl. at 293–294 ("[T]he possibilities of misidentification and adulteration must be eliminated, not absolutely, but as a matter of reasonable probability.").

The government also submitted a declaration by its counsel to certify each of the 12 disputed documents is "a true and correct copy" of the original source and explained the original source of each document. *See* Declaration of Jimmy S. McBirney at 1–4; *Grand Acadian, Inc. v. United States*, 87 Fed. Cl. at 204–05 (admitting plaintiff's evidence with an affidavit from plaintiff's president stating he has "reviewed the Site Plan . . . , and declare[s] that it is a true and correct copy of the Site Plan provided to [him]"). The declaration of the government's counsel explains the original source of each disputed document and his personal knowledge regarding how the document was produced during this case. *See id.* Plaintiff calls into question the validity of, for example, three emails from its own superintendent on the project related to this case, Scott Franklin, who worked for plaintiff as an independent contractor. *See* Pl.'s Suppl. Br. at 3–4. Plaintiff argues it "is not sure of the authenticity of" these emails because they are "not bated with either a United States or MIC designation. No authentication of this document has occurred in any deposition." *Id.* The government's counsel explained although the parties received Mr. Franklin's emails from different sources,[3] because their respective collections of Mr. Franklin's emails contained "the same number of files . . . and the same total amount of data," they would "agree that it was not necessary for them to exchange their respective copies of Scott Franklin's identical production." Declaration of Jimmy S. McBirney at 2–3. Plaintiff does not explain why it chose not to address its lack of certainty regarding the authenticity of the

---

[3] The government explains the email data comes from different sources partially because "Mr. Franklin provided the United States with a large collection of emails in native format that were responsive to the discovery requests served on MIC, but that MIC had not ever produced." Declaration of Jimmy S. McBirney at 2.

versions of Mr. Franklin's emails the government cites by comparing them to its own copies of Mr. Franklin's emails.

Rule 901(b)(1) allows testimony of a witness with personal knowledge to certify "an item is what it is claimed to be." FRE 901(b)(1). The government's authentication—through its counsel's declaration stating each of the disputed documents is "a true and correct copy"—is "sufficient to support a finding that the item is what the [government] claims it is." FRE 901(a); Declaration of Jimmy S. McBirney at 1–4; *Grand Acadian, Inc. v. United States*, 87 Fed. Cl. at 204–05. Thus, the government "satisf[ies] the requirement of authenticating," and the Court therefore admits the government's exhibits and attachments to its motions for the summary judgment stage of proceedings. FRE 901(a); *see Homeland Housewares, LLC*, 581 F. App'x at 873 (Fed. Cir. 2014) (requiring a party asserting the evidence to present "sufficient evidence from which a reasonable finder of fact could conclude that the [evidence was] authentic").

Pursuant to RCFC 12(f)(2), "[t]he Court may strike from a pleading an insufficient defense" based on a "motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." The government filed its summary judgment motion with exhibits on 3 June 2020. In its responsive brief filed on 27 June 2020, plaintiff broadly alleged the government's exhibits lacked authentication. *See* Pl.'s Reply at 2. Plaintiff eventually challenged the authentication of 12 documents, asserting "authentication is an open issue," in its 1 October 2020 supplemental brief. Pl.'s Suppl. Br. at 3–5. Plaintiff's initial allegation of lack of authentication came 24 days after plaintiff's filing date, and plaintiff did not allege issues with any specific documents until nearly fourth months following plaintiff's filing date. Plaintiff also did not make these allegations in the form of a motion, as Rule 12 requires. *See* RCFC 12(f)(2). Regardless of these deficiencies, the Court considered plaintiff's allegations, and the government replied in a timely manner in its supplemental brief on 8 October 2020. *See* Def.'s Suppl. Br. Plaintiff requested the government submit "evidence 'sufficient to support a finding that the matter in question is what its proponent claims.'" Pl.'s Suppl. Br. at 5. The government more than met this burden. The Court therefore finds the government sufficiently cured any remaining question of authenticity of the evidence plaintiff objected to through the declaration of the government's attorney; any delay in the government's cure is due to plaintiff's failure to object to specific evidence before 1 October 2020. *See* Declaration of Jimmy S. McBirney; *Landis*, 299 U.S. at 255–56 (identifying "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Grand Acadian, Inc. v. United States*, 87 Fed. Cl. at 204–05 (admitting evidence with an affidavit declaring it is "it is a true and correct copy").

## V.    Admissibility of Mr. Bernert's Declaration

The government moved to strike certain statements in Mr. Bernert's Declaration as hearsay not within any exception under Federal Rule of Evidence 801(c) and inadmissible lay witness opinion according to Federal Rule of Evidence 701(a) and (c). *See* Def.'s Objs. Plaintiff argues the government waived its objection by using the information to support its own motion for summary judgment. *See* Pl.'s Mot. Strike Def.'s Objs. at 1. Plaintiff also argues "Mr. Bernert's opinions should be admissible because they "were based on his investigation and

reflected his investigatory findings and conclusions, and was [sic] not rooted exclusively in his expertise." *Id.* at 9. According to plaintiff, Mr. Bernert's lay opinions are conclusions from that investigation and admissible under Rule 701. *Id.* The government argues it should not be "required to choose between either resting on its objections to MIC's proffered evidence, or waiving those objections by addressing the substance of that evidence." Def.'s Objs. at 3. The government further argues "Mr. Bernert's proffered opinions . . . are neither based on his personal knowledge, nor limited to 'business operations and industry practices' and instead are 'based on scientific, technical, [and] other specialized knowledge.'" *Id.* at 5.

### A.    Applicable Law

Rule 701 of the Federal Rules of Evidence states "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:  (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope or Rule 702." FRE 701. A "party offering [Rule 701 lay witness] testimony must show that the witness had an adequate opportunity to observe and presently recalls the observation, and a person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation." *BPLW Architects & Eng'rs, Inc. v. United States*, 106 Fed. Cl. 521, 545 (2012) (internal citations omitted). The Federal Circuit has not ruled on the applicability of Rule 701 to after-the-fact investigations,[4] but other judges on this court have held personal knowledge to be required for a lay witness. *See, e.g.*, *DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 735 (2010) ("[A] witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.") (quoting 3 C.B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:5 (3d ed. 2007)); *RP1 Fuel Cell, LLC v. United States*, 120 Fed. Cl. 288, 319 (2015) ("[A] lay witness can testify on his or her 'perception,' as long as it is connected to their personal knowledge.") (internal citation omitted), *aff'd*, 644 F. App'x 1012 (Fed. Cir. 2016).

"Testimony of a lay witness is admissible only upon a showing that the witness has personal knowledge of the subject matter of the testimony." *BPLW Architects & Eng'rs*, 106 Fed. Cl. at 545 (citing *DataMill*, 91 Fed. Cl. at 734). Rule 701 of the Federal Rules of Evidence, "which allows a lay witness to testify in opinion form, requires the testimony to be 'rationally

---

[4] Plaintiff's counsel was unable to identify a case from this court or the Federal Circuit to support its assertion regarding an after-the-fact investigation being admitted as lay opinion:

> THE COURT:  Okay. So, Mr. Bowser, do you have a Federal Circuit or Court of Federal Claims case that helps us understand your assessment of allowing an after-the-fact investigation like this?

> MR. BOWSER:  Your Honor, I could not find a specific case in either of those jurisdictions that either allowed or disallowed an after-the-fact investigation. Considering that the Court of Claims Rule is basically a mirror of the Federal Rule, I expanded my search out and that's when I located the *Acosta* decision and the *U.S. vs. Whaley* decision.

Tr. at 48:17–25, 54:13–23.

based on the witness's perception.'" *Id.* (quoting FRE 701(a)). This requirement "effectively incorporates the personal knowledge requirement as a prerequisite to acceptance of opinions by lay persons." *DataMill*, 91 Fed. Cl. at 734–35. The party offering the witness's testimony must demonstrate the witness "'had an adequate opportunity to observe and presently recalls the observation,' and a 'person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation.'" *Id.* at 735 (quoting 1 McCormick on Evidence § 10 (Kenneth S. Broun et al. eds., 2006)).

Rule 701(c) of the Federal Rules of Evidence prohibits lay testimony from being "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701(c). Rule 702 in turn states, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FRE 702. "Unlike an ordinary witness, see Rule 701, an expert [under FRE 702] is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (citing FRE 702).

Federal Rule of Evidence 802 is the general rule against hearsay: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." FRE 802. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342 (Fed. Cir. 1999).

### B.    Whether Mr. Bernert's Declaration Is Hearsay or Expert Witness Opinion

#### 1.    Whether the Government Waived Its Objection

Plaintiff argues the government waived any objection regarding Paragraph 4E in Mr. Bernert's Declaration by using the evidence to support the government's summary judgment motions. Pl.'s Mot. Strike Def.'s Objs. at 1. The government notes there is no binding authority supporting plaintiff's assertion the government was "required to choose between either resting on its objections to MIC's proffered evidence, or waiving those objections by addressing the substance of that evidence." Def.'s Objs. at 3. Courts routinely consider alternative arguments, including arguments (1) evidence proffered by the opposing party should not be considered, but (2) even if considered, the evidence cannot support the opposing party's claim. *See, e.g.*, *Parsons Evergreene, LLC v. Sec'y of Air Force*, 968 F.3d 1359, 1365 (Fed. Cir. 2020) ("The government argues alternatively that the CDA is limited to contracts for 'the procurement of services' or 'the procurement of construction . . . of real property, and the contract here does not qualify.'"). Plaintiff provides no authority stating the Court must abandon the established litigation practice of offering alternative arguments; therefore the government did not waive its objection to Paragraph 4E by using the same information to support its own motion for summary judgment. *See id.*

### 2. Whether Mr. Bernert's Declaration Is Hearsay or Expert Witness Opinion

#### a. Paragraphs 4E and 5–12 in Mr. Bernert's Declaration

The government objects to Paragraphs 4E and 5–12 in Mr. Bernert's Declaration, arguing they contain "allegations of fact beyond Mr. Bernert's personal knowledge, purportedly based on academic literature" and "modeling Mr. Bernert purportedly developed" to estimate the project site's stream flow. Def.'s Objs. at 1–2. The government asserts Paragraph 4E contains "statements purporting to relay information contained in academic literature are hearsay not within any exception" and in Paragraphs 5–12, "statements purporting to relay information contained in Exhibits L–S are hearsay not within any exception." *Id.* at 2 (citing FRE 801(c)). According to plaintiff, Mr. Bernert is "an owner, executive (VP) and acts as a project manager for MIC . . . . He was the lead office person reviewing the Project, conducted an investigation, looked for and reviewed the limited flow data available for the Project site, and was kept informed as to what was happening on site." Pl.'s Mot. Strike Def.'s Objs. at 8. Paragraph 4E "accurately reflects how [Mr. Bernert] determined that the weather experienced by MIC was unusually severe." Mr. Bernert's Declaration at 3. "Paragraph 5 addresses . . . relevant MIC Daily Construction Reports, DCR Notes, Quality Control reports, and activities tracking forms that note and track MIC encountering man-made debris," and "paragraphs 6 through 12 cover [separate] Weather Events 1 though [sic] 7." Pl.'s Mot. Strike Def.'s Objs. at 9.

Plaintiff presented Mr. Bernert as a lay witness. Counsel for plaintiff stated during oral argument Mr. Bernert's Declaration is based on an after-the-fact investigation.[5] When the Court asked whether Mr. Bernert's investigation "is an after-the-fact investigation," plaintiff's counsel replied, "[y]es . . . . It would have started at the—when the claim was being prepared." Tr. at 53:2–7. Plaintiff's counsel repeatedly conceded Mr. Bernert was not personally present at the project site during the time plaintiff complained of poor weather. When the Court asked whether plaintiff's counsel "would agree then that Mr. Bernert is commenting on events that he did not actually witness and walking through a process that did not happen at the time in 2014," he replied: "Yes . . . . I mean, Mr. Bernert was—as you said, he kept informed of what was going on at the project site. He would receive email communications and things like that. But if you're asking about actual eyes on the project, watching the river go up and down, then no." *Id.* at 54:24–55:10. Mr. Bernert based his opinion on (1) flow data prepared by others and (2) being "kept informed [by others] as to what was happening on site." Pl.'s Mot. Strike Def.'s Objs. at 13; Mr. Bernert's Declaration at 2–3.

Regarding the admissibility of evidence at summary judgment, RCFC 56 states "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). RCFC 56(c) also says, however, "[a] party may object that

---

[5] The Court also asked plaintiff's counsel whether Paragraph 4E is "a historical assessment of what [Mr. Bernert] did at the time" and "not what [Mr. Bernert] did in 2014." Plaintiff's counsel stated "[Paragraph 4E] is what [Mr. Bernert] did after the fact." Tr. at 53:5–16.

the material cited to support or dispute a fact cannot be presented in a form that would be inadmissible in evidence." RCFC 56(c)(2). RCFC 56(c) adds, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." RCFC 56(c)(4).

"'To be acceptable at summary judgment stage, the evidence presented in the affidavit must be evidence that would be admissible if presented at trial through the testimony of the affiant as a sworn witness.'" *Scosche Indus., Inc. v. Visor Gear, Inc.*, 121 F.3d 675, 682 (Fed. Cir. 1997) (quoting 11 James Wm. Moore, *Moore's Federal Practice* § 56.14[1][d], at 56–162 (3d ed.1997)). FRE 701 requires "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope or Rule 702." The Federal Circuit has not ruled on the applicability of Rule 701 to after-the-fact investigations, but other judges on this court have held personal knowledge of an event to be required of a lay witness. *See DataMill*, 91 Fed. Cl. at 735 ("[A] witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.") (quoting 3 C.B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:5 (3d ed. 2007)); *BPLW Architects & Eng'rs*, 106 Fed. Cl. at 545 ("The party offering [Rule 701 lay witness] testimony must show that the witness had an adequate opportunity to observe and presently recalls the observation, and a person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation.") (internal citation omitted); *RP1 Fuel Cell, LLC*, 120 Fed. Cl. at 319 (2015) ("[A] lay witness can testify on his or her 'perception,' as long as it is connected to their personal knowledge.") (internal citation omitted), *aff'd*, 644 F. App'x 1012 (Fed. Cir. 2016).

Plaintiff cited decisions from other district courts to argue an after-the-fact investigation should be allowed as lay witness testimony under Rule 701. Pl.'s Mot. Strike Def.'s Objs. at 5–7 (citing *Acosta v. Cent. Laundry, Inc.* 273 F.Supp.3d 553 (E.D. Pa. 2017) and *United States v. Whaley*, 860 F.Supp.2d 584 (E.D. Tenn. 2012)); *see also* Tr. at 53:16–23. In *Acosta*, the district court admitted plaintiff's witness's after-the-fact investigation because plaintiff's witness "proffered testimony [] reasonably derived from the data that she personally perceived" by conducting in-person interviews and examining defendant's in-house record including time cards and hand-scanner records. *Acosta*, 273 F.Supp.3d at 557–58. Nonetheless, the district court confessed its decision to allow this testimony as lay opinion was a "modest departure from the core area of lay opinion testimony." *Id.* at 557 (internal citation omitted). The district court in *Whaley* allowed the government's witnesses' proposed lay opinion testimony despite defendants' challenge because "[d]efendants are confusing fact with lay opinion." *Whaley*, 860 F.Supp.2d at 592. The court in *Whaley* also held the testimony was "'not based upon scientific, technical, or other specialized knowledge *within the scope of Rule 702*,' but is instead based upon their own 'particularized knowledge,' i.e., their familiarity with the underwriting process and lending policies at their banks, that they have due to their employment at their respective banks." *Id.* at 596 (quoting FRE 701(c) and FRE 701 (Advisory Committee's Note)) (emphasis in original). *Whaley* is inapposite because it discusses knowledge witnesses gained from their routine work

experience, while Mr. Bernert in this case gained his knowledge from an after-the-fact investigation for plaintiff.  *Compare id. with* Tr. at 53:5–54:7.

Plaintiff's counsel stated Mr. Bernert's testimony is based on an after-the-fact investigation and conceded Mr. Bernert was not present at the project site during the time plaintiff alleged poor weather.  Tr. at 53:5–54:7.  Mr. Bernert's after-the-fact investigation summary cites numerous third-party scientific reports and academic literature reviewing hyrdology of the dredging area and historical river flow rates."  Mr. Bernert's Declaration at 3–5 (Discussion of third-party sources included:  "the hydrology of the system is presented in Nelson (1982), Lieb and Thomas (2005) and Czuba, *et al.*, (2010);" "Nelson (1982) and Czuba, *et al*. (2010) have noted the winter flow in Sol Duc is 1.5 times higher than the other tributaries;" "Using data from the existing gages a combined flow hydrograph for the La Push site during the work window was compiled . . . .  The data is comparable to the published studies and was used to estimate steam flow (in cubic feet per seconds [cfs]) at the La Push project site;" "The historical data for 37 years of flow regimes at the Calawah River gage is representative of the recent conditions indicating the storm events on one of the system's major tributaries . . . .").  Mr. Bernert thus lacks the personal knowledge of the events to which he is testifying, contrary to Rule 701's requirements for lay witness opinion.  *See* FRE 701; *Scosche*, 121 F.3d at 682 (quoting 11 James Wm. Moore, Moore's Federal Practice § 56.14[1][d], at 56–162 (3d ed.1997)) ("'To be acceptable at summary judgment stage, the evidence presented in the affidavit must be evidence that would be admissible if presented at trial through the testimony of the affiant as a sworn witness.'"); *DataMill*, 91 Fed. Cl. at 735 ("[A] witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.").  Thus, the Court finds plaintiff's proffered testimony in Paragraphs 4E and 5–12 of Mr. Bernert's Declaration are inadmissible because they are expert opinion testimony from a lay witness.  *Id.*  The Court's exclusion of statements in Paragraphs 5–12, however, is limited to only the assertions in Mr. Bernert's declaration that go beyond the records cited—specifically, statements related to calculations of flow rates or conclusions regarding weather events; the government does not object to detail within Exhibits L–S cited as the Exhibits are admissible business records.  *See* FRE 803(6)(b); Def.'s Objs. at 2, n.1 ("The United States does not object to the Court's consideration of [Exhibits L–S] themselves to the extent they are plaintiff's business records.  The exhibits do not provide support for the factual assertions Mr. Bernert makes in his declaration.").

### b.      Exhibit H

The government objects to Exhibit H of Mr. Bernert's Declaration as impermissible hearsay and improper lay witness opinion.  Def.'s Objs. at 2–3; *see* Pl.'s Resp. to Def.'s First Set of Interrogs. and Second Req. for Produc. of Docs., Exhibit H, ECF No. 81-1.  The government's objection describes Exhibit H as "consist[ing] of discovery responses in this case prepared and served on the United States by plaintiff."  Def.'s Objs. at 2.  The government then asserts Exhibit H consists of impermissible hearsay because "[d]iscovery responses are hearsay not within any exception when offered for the truth of the matter asserted by the party providing those responses."  *Id.* at 3 (citing FRE 801(c)).  In response, plaintiff does not dispute the discovery responses themselves contained in Exhibit H are impermissible hearsay if offered for the truth of the matter without an exception; rather, plaintiff argues "[a]s testimony in his declaration,

[Exhibit H] is exempt from hearsay" because "[t]he Advisory Committee Notes for FRE 802 recognize summary judgment declarations as being exempt from hearsay exclusions." Pl.'s Mot. Strike Def.'s Objs. at 10 (citing FRE 802. The Rule Against Hearsay (Advisory Committee's Note)) ("The following examples illustrate the working of the exception: [. . .] Rule 56: affidavits in summary judgment proceedings."). Plaintiff also argues Exhibit H is permissible lay witness opinion. *Id.* The government observes plaintiff "does not dispute that a party's use of its own interrogatory responses as substantive evidence constitutes hearsay not within any exception." Def.'s Reply at 6 (internal citation omitted). The government also notes plaintiff "cites no authority to support its attempt to circumvent FRE 801(c) by 'incorporating' inadmissible discovery responses into a summary judgment declaration." *Id.* At oral argument, plaintiff explained "all the declaration does here is basically pull in what had been done years prior as part of the interrogatory responses and as part of the claim documents." Tr. at 63:5–8. The government responded: "the problem with [plaintiff] citing to interrogatory number 9 is that interrogatory number 9 is hearsay. . . . [A] party cannot use their own interrogatory responses as substantive evidence. So it doesn't work for that reason." *Id.* at 64:9–17.

A party may not rely on inadmissible hearsay offered for the truth of the matter asserted in opposing a motion for summary judgment. FRE 802; RCFC 56(c)(4) ("An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Scosche*, 121 F.3d at 681–82; *Brooks v. Tri–Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). In *Scosche*, the Federal Circuit held if a declaration is "hearsay[,] it therefore does not satisfy the requirement of Fed.R.Civ.P. 56(e) [now FRCP 56(c)] that affidavits opposing summary judgment 'shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" 121 F.3d at 681. In *Brooks*, the Eighth Circuit explained "[w]hen an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks*, 425 F.3d at 1111. The Eighth Circuit also held in *Brooks*, "deposition testimony must also be admissible to be considered in ruling on a motion for summary judgment." *Id.* at 1112; *see also Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir. 1984) (affidavits containing hearsay statements failed to comply with Rule 56(e) [now Rule 56(c)] requirement "that the facts set forth in affidavits be admissible in evidence"); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980) ("hearsay evidence in [Rule 56] affidavits is entitled to no weight"); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (district court abused its discretion in considering at summary judgment a declaration "based on inadmissible hearsay"); *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264–65 (6th Cir. 1979) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) [now Rule 56(c)] and must be disregarded.").

Plaintiff attempts to introduce impermissible hearsay for the truth of the matter asserted by repackaging its interrogatory responses through a declaration in support of its summary judgment motion. Tr. at 63:5–8 (clarifying "all the declaration does here is basically pull in what had been done years prior as part of the interrogatory responses and as part of the claim documents"). According to plaintiff, Exhibit H is exempt from the rule against introducing hearsay for the truth of the matter because it is "testimony in [Mr. Bernert's] declaration." Pl.'s

- 18 -

Mot. Strike Def.'s Objs. at 10. Plaintiff's assertion fails to evade the Federal Circuit's requirement in *Scosche* "that affidavits opposing summary judgment 'shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" 121 F.3d at 681. Plaintiff effectively admits the interrogatory responses are not themselves admissible into evidence by seeking to reintroduce them through a declaration. *See* Tr. at 63:5–8. This fails the requirement the Eighth Circuit explained in *Brooks*: "[w]hen an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks*, 425 F.3d at 1111. The "deposition testimony" plaintiff seeks to admit through a declaration is not "admissible to be considered in ruling on a motion for summary judgment." *Id.* 1112; *see also Innovention Toys, LLC v. MGA Entm't, Inc.*, No. CIV.A. 07-6510, 2012 WL 5398476, at *3 (E.D. La. Nov. 4, 2012) (sustaining an objection to a party's exhibit introducing its own interrogatory responses because "discovery responses are self-serving hearsay, and no exception to the hearsay rule applies"). Exhibit H is inadmissible hearsay insofar as plaintiff offers it for the truth of the matter asserted without an exception, and plaintiff's act of incorporating interrogatory responses in a declaration does not create an exception to the Federal Rules of Evidence. FRE 802; *Scosche*, 121 F.3d at 681 ("[A]ffidavits opposing summary judgment 'shall set forth such facts as would be admissible in evidence . . . .'"); *Innovention Toys*, 2012 WL 5398476, at *3 ("[D]iscovery responses are self-serving hearsay, and no exception to the hearsay rule applies"). The Court, therefore, will not consider plaintiff's citations of inadmissible hearsay in Exhibit H for the truth of the matter asserted. FRE 802; RCFC 56(c); *Scosche*, 121 F.3d at 681–82 (holding "a declaration submitted in opposition to the summary judgment motion . . . is hearsay; it therefore does not satisfy the requirement of Fed.R.Civ.P. 56(e) [now FRCP 56(c)] that affidavits opposing summary judgment 'shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein'").

    While the government objected wholesale to the citation of Exhibit H for the truth of the matter asserted as hearsay, its improper lay witness objection was narrower: "Exh. H also contains purported analysis of weather patterns and sediment content that is not based upon the personal knowledge of plaintiff or of the individual who has verified the responses (Joseph Bernert), and that, if offered as testimony, would constitute improper lay witness opinion that: (1) is not rationally based on the witness's perception, and; (2) is based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Def.'s Objs. at 3 (citing FRE 701(a), (c)). The government explains if plaintiff's discovery responses in Exhibit H are "construed as testimony that Mr. Bernert would offer at trial, that testimony would also constitute both: (1) alleged facts relating to project site conditions . . . beyond his own personal knowledge; and (2) impermissible lay witness opinion under Rule 701." Def.'s Reply at 6–7. When the government deposed Mr. Bernert regarding the preparation of Exhibit H, he clarified he was the author of some sections of Exhibit H and reviewed the entire document.[6] At oral

---

[6] The government deposed Mr. Bernert in 2018 regarding the preparation of Exhibit H:

> Q. All right. And were you responsible for preparing these responses [in Exhibit H]?
> A. Yes.
> Q. Did anybody else assist you with preparing these responses?

argument the parties focused on Exhibit H's Interrogatory Number 9 as the disputed testimony from Mr. Bernert, and plaintiff's counsel explained "the interrogatory was attached to the document and incorporated in, and [Mr. Bernert] testified that it accurately reflects how [plaintiff] determine[d] that the weather experienced by MIC was unusually severe." Tr. at 51:19–22.  As the Court held *supra* V.B.2.a., Mr. Bernert lacks personal knowledge to provide lay opinion regarding the content in paragraphs 4E and 5–12 of his declaration.  Mr. Bernert stated in Paragraph 4E of his declaration:  "My answer to Interrogatory No. 9 accurately reflects how I determined that the weather experienced by MIC was unusually severe."  Mr. Bernert's Declaration at 3.  For the same reasons Mr. Bernert cannot provide the lay opinion in Paragraph 4E of his declaration discussed *supra* V.B.2.a. (the testimony is based on an after-the-fact investigation and Mr. Bernert was not present at the project site during the time plaintiff alleged poor weather), the Court also finds Mr. Bernert may not offer Interrogatory Number 9 as lay witness testimony.  *See* FRE 701; *Scosche*, 121 F.3d at 682 (quoting 11 James Wm. Moore, Moore's Federal Practice § 56.14[1][d], at 56–162 (3d ed.1997)) ("'To be acceptable at summary judgment stage, the evidence presented in the affidavit must be evidence that would be admissible if presented at trial through the testimony of the affiant as a sworn witness.'"); *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014) (lay evidence "based on scientific, technical, or other specialized knowledge" "is inadmissible in court and thus cannot be used to oppose summary judgment"); *DataMill*, 91 Fed. Cl. at 735 ("[A] witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others.").

The government's objection stated Exhibit H "also contains purported analysis of weather patterns and sediment content that is not based upon the personal knowledge of plaintiff or of the individual who has verified the responses (Joseph Bernert), and that, if offered as testimony, would constitute improper lay witness opinion."  Def.'s Objs. at 3.  The government added the interrogatories in Exhibit H not only offer "weather related opinions" but also "purport to opine on the meaning and import of 'steep side cuts' and 'dredge angles,' and provide anecdotal analysis of sediment samples."  Def.'s Reply at 7.  The government describes the analysis in these interrogatories as providing "improper opinion on subjects far beyond the weather conditions Mr. Bernert opines about in his declaration, including speculative opinions on sediment and clay content that are far beyond the bounds of lay opinion permitted by FRE 701." *Id.*  Much of Exhibit H contains analysis the government does not object to, and the government only "requests that the Court disregard those statements for the purposes of resolving the parties' cross-motions for summary judgment."  Def.'s Objs. at 1.  The Court therefore does not understand the government to be asking the Court to disregard Exhibit H as entirely inadmissible for the purpose of Mr. Bernert's lay witness testimony.  Accordingly, the Court will not consider

---

A. Attorneys.
Q. Other than your attorneys?
A. I believe components were done by Mike Harrison—or I know components were done by Mike Harrison, so I don't have to believe.  So I did certain sections; he did sections.
Q. You mean you wrote some sections; he wrote some sections?
A. Yes, and then I reviewed the whole thing, too.

Suppl. Decl. of David H. Bowser in Supp. of Pl.'s Opp'n in Resp. to Def.'s Objs. to Inadmissible Evidence Offered in Supp. of Pl.'s Mots. for Summ. J., et al., Ex. T at 6, ECF No. 85-1 (Dep. of Joseph Bernert Taken in Behalf of the Def.).

testimony from Mr. Bernert in Exhibit H offering expert opinion, particularly Mr. Bernert's testimony "contain[ing] purported analysis of weather patterns and sediment content that is not based upon . . . personal knowledge." *Id.* at 3; FRE 701; *Scosche*, 121 F.3d at 682; *Felkins*, 774 F.3d at 651; *DataMill*, 91 Fed. Cl. at 735.[7]

## VI.   Plaintiff's Motion to Designate Joseph Bernert as an Expert

Plaintiff moved in the alternative to designate Mr. Bernert as an expert witness.  *See* Pl.'s Mot. Strike Def.'s Objs. at 11.[8]  The government objected to plaintiff's motion as "reopening expert discovery" without good cause.  Def.'s Reply at 7.

### A.   Legal Standard for Moving to Designate an Expert Witness After Close of Discovery

RCFC 16(b)(4) provides "[a] schedule may be modified only for good cause and with the judge's consent."  The Federal Circuit has not ruled on the applicability of RCFC 16(b)(4) (or FRCP 16(b)(4)) to the issue of designating an expert witness after the close of discovery.  The Federal Circuit has, however, applied the "good cause" requirement of Rule 16(b)(4) to analyze other motions to modify a court's schedule. *See Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011) (applying the "good cause" requirement in reviewing a district court's denial of a party's untimely motion to amend its complaint).  The Federal Circuit explained, "[u]nder the good cause standard, the threshold inquiry is whether the movant has been diligent." *Id.*  In *Advanced Software*, the Federal Circuit held the district court did not abuse its discretion when it found the movant "unduly delayed seeking to amend because it 'had ample time to conduct discovery and to [amend its pleading]'" but failed to do so for four months. *Id.*

Another judge of this court adopted a four-factor test from the Fifth Circuit in applying Rule 16(b)(4) to determine whether good cause existed for a request to amend the discovery schedule to designate an expert witness after discovery closed:

[F]our factors should be considered by a trial court in determining whether "good cause" exists to modify a schedule under Fed. R. Civ. P. 16 to accommodate the

---

[7] Mr. Bernert also discussed Interrogatories 3, 5, 7, and 8 in Paragraph 4 of his declaration.  Mr. Bernert's Declaration at 2.  The other Interrogatories differ from Interrogatory No. 9 because they consist of Mr. Bernert's lay witness testimony as to his and plaintiff's activities and present sense impressions.  For example, Paragraph 4A states "[m]y answer to Interrogatory No. 3 accurately describes the process and equipment MIC planned and used to dredge the project," and Paragraph 4B states "my answer to Interrogatory No. 5 accurately describes how MIC viewed certain specifications during bidding." *Id.*  Insofar as Mr. Bernert wishes to offer admissible lay testimony in a declaration he may do so, but the Court will not give any additional weight to a declaration's citation of the interrogatories as they are inadmissible hearsay. *See Scosche*, 121 F.3d at 682 (quoting 11 James Wm. Moore, Moore's Federal Practice § 56.14[1][d], at 56–162 (3d ed.1997)) ("'To be acceptable at summary judgment stage, the evidence presented in the affidavit must be evidence that would be admissible if presented at trial through the testimony of the affiant as a sworn witness.'").

[8] When the Court asked whether the government agreed its objections to Paragraphs 4E and 5–12 as impermissible hearsay would be moot if the Court allowed Mr. Bernert to testify as an expert witness, counsel for the government replied, "if he were an expert witness, he would be permitted to rely on materials such as the purported academic literature that he cites in his declaration." Tr. at 56:9–21.

designation of an additional expert witness:  (1) the reasons for the moving
party's failure to designate the witness in compliance with an existing schedule;
(2) the importance of the testimony; (3) potential prejudice in allowing the
testimony; and (4) the availability of a cure for any prejudice.

*Sys. Fuels, Inc. v. United States*, 111 Fed. Cl. 381, 383 (2013).  The court in *System Fuels* denied
plaintiff's motion to designate a proffered witness as an expert 11 months after plaintiff's
deadline but before the close of the government's expert discovery, observing if it granted the
motion "the Government would need to investigate [plaintiff's new expert's] assertions and
might need to hire a new expert," and while "discovery deadlines can be extended, the court
cannot compensate the Government for the added expense it would incur."  *Id.* at 384; *see also
1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1288 (5th Cir. 1991) (listing the four factors);
*Eichorn v. AT&T Corp.*, 484 F.3d 644, 651 (3d Cir. 2007) (affirming a trial court's ruling
denying the addition of an expert witness where the court considered plaintiffs' "explanation for
the lateness of their request, the prejudice that would result if it were granted or denied, and the
extent to which the plaintiffs' [initial] decision to proceed without expert testimony was a
deliberate one").  The Third Circuit also explains it and other circuits "have frequently upheld a
trial court's exercise of discretion to deny a party's motion to add experts or other fact witnesses
after the close of discovery or after a deadline in a scheduling order."  *Eichorn*, 484 F.3d 650–51
(citing *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990) and *Burks v. Okla.
Publ'g Co.*, 81 F.3d 975, 978–80 (10th Cir. 1996)).

## B.   Analysis

The Federal Circuit requires this Court to apply RCFC 16(b)(4)'s good cause standard in
deciding whether to modify the schedule.  *Advanced Software Design Corp.*, 641 F.3d at 1381.
The Federal Circuit explained in *Advanced Software*, "[u]nder the good cause standard, the
threshold inquiry is whether the movant has been diligent."  *Id.*  The Federal Circuit has not
spoken directly on the question of applying the good cause standard to the question of modifying
the schedule to designate an expert witness after expert witness discovery has ended; therefore,
the Court will evaluate whether good cause exists to modify a schedule pursuant to RCFC
16(b)(4) using the four-factor analysis the Fifth Circuit employs:  (1) the reasons for the moving
party's failure to designate the witness in compliance with an existing schedule; (2) the
importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the
availability of a cure for any prejudice.  *1488, Inc.,* 939 F.2d at 1288; *see Sys. Fuels*, 111 Fed. Cl.
at 383 (applying the Fifth Circuit's four-factor analysis).[9]  The Fifth Circuit's approach is
consistent with the Third Circuit's test the court employed in *Eichorn*.  *See* 484 F.3d at 651.

### 1.   The Reasons for Plaintiff's Failure to Designate Mr. Bernert as an
Expert Witness in Compliance with the Existing Schedule

Plaintiff argues it presented Mr. Bernert as a lay witness because it had "a reasonable
belief supported by general contracting practice and case law that Mr. Bernert would be able to
offer his lay opinions [based on after-the-fact investigations] under FRE 701."  Tr. at 57:15–20.

---

[9] Plaintiff's counsel was unable to identify a case from this Court or the Federal Circuit finding good cause to
modify an expert discovery schedule under Rule 16.  *See* Tr. at 76:8–15.

Plaintiff distinguishes delay resulting from its reliance on its good-faith understanding of the law from a "kind of deliberate, knowing act by the party that they ignore, and then they come back later saying, hey, I made a mistake back then by ignoring this." *Id.* at 79:12–17.  The government stated at oral argument it did not know of "any case law whatsoever that suggests that a mistake of law is a basis for reopening a discovery schedule." *Id.* at 64:4–6.  When the Court asked plaintiff for authority in case law of a court finding "good cause exists to modify a schedule under Rule 16 that's similar to this situation," counsel for plaintiff replied "I haven't been able to locate a specific case that lines up well factually with the situation that we have here.  If we had that, I would have cited it in my briefing back to the Court." *Id.* at 76:9–17.  The government agreed with plaintiff "there are no cases where, under circumstances such as this, where it's simply a result of a mistake of law, the Court has permitted a reopened expert discovery schedule." *Id.* at 77:7–10.

Rule 701 does not permit a lay witness to testify without personal knowledge or "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701(a); FRE 701(c).  Plaintiff improperly sought to apply Rule 701 to present Mr. Bernert's testimony as lay witness opinion.  *See supra* V.B.2.  The expert discovery window for this case closed on 6 December 2019.  *See* Joint Status Report, ECF No. 69.  In the Federal Circuit, "[u]nder the good cause standard, the threshold inquiry is whether the movant has been diligent." *Advanced Software Design Corp.*, 641 F.3d at 1381 (applying the "good cause" requirement in affirming a district court's denial of a party's untimely motion to amend its complaint).  In *Advanced Software*, the Federal Circuit held the district court did not abuse its discretion when it found the movant "unduly delayed seeking to amend because it 'had ample time to conduct discovery and to [amend its pleading]'" but failed to do so for four months.  *Id.*  Plaintiff in this case did not move until seven months after the close of expert discovery and nine months after plaintiff's expert witness reports deadline to designate Mr. Bernert as an expert witness.  *See* Pl.'s Mot. Strike Def.'s Objs. at 11.  Plaintiff had ample time to review the rules and seek to amend the schedule to re-designate Mr. Bernert as an expert witness.  Plaintiff's reason for its failure to timely seek to amend the schedule, however, does not justify the undue delay of over seven months from the close of expert discovery and nine months from plaintiff's expert witness reports deadline and the cost to the government of reopening expert discovery.  *See Sys. Fuels*, 111 Fed. Cl. at 384 (denying plaintiff's motion to designate a proffered witness as an expert 11 months after plaintiff's deadline but before the close of the government's expert discovery because "the Government would need to investigate [plaintiff's new expert's] assertions and might need to hire a new expert," and while "discovery deadlines can be extended, the court cannot compensate the Government for the added expense it would incur").  The American legal system "ha[s] long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) (quoting *Barlow v. United States*, 7 Pet. 404, 411 (1833) (Story, J.)).  Plaintiffs' reasons for its failure to designate Mr. Bernert in compliance with the existing schedule favors the government.

### 2.    The Importance of Mr. Bernert's Testimony

Counsel for plaintiff argued Mr. Bernert's testimony is "essential to what's going on in the case" and noted "[the issues Mr. Bernert testified on] are central issues to [plaintiff's] claims

and defenses." Tr. at 75:16–24.  Plaintiff sought to distinguish this case from *System Fuels* based on the importance of Mr. Bernert's testimony.  *Id.* at 75:9–24.  According to plaintiff, this court found for the nonmoving party in *System Fuels* because "there was little to no benefit from the testimony." *Id.*; *see also Sys. Fuels,* 111 Fed. Cl. at 384 (finding when analyzing the second factor, "the court has determined that, [even if the witness was an expert witness], [his] testimony would be hearsay and irrelevant.").  The government did not dispute the importance of Mr. Bernert's testimony for plaintiff.  The importance of Mr. Bernert's testimony favors plaintiff.

### 3.     Potential Prejudice to the Government

The government argues if the Court allows plaintiff to perform a post hoc designation of Mr. Bernert as an expert witness, the government will need to incur the expense of "(1) a renewed discovery period; (2) repeating summary judgment briefing following expert discovery; and (3) enduring further . . . delay in seeing this case to resolution."  Def.'s Reply at 9–10. Plaintiff argues the government will not be prejudiced because the government received Mr. Bernert's report on 2 November 2017, "years before any applicable due date," and the government deposed Mr. Bernert for two days.  *See* Pl.'s Mot. Strike Def.'s Objs. at 12.

The government did not engage an expert during the original discovery window, nor was it prepared to have an expert to respond to Mr. Bernert regarding the weather issues.  Tr. at 66:16–23.  Before the parties agreed to the discovery schedule, plaintiff advised the government it had retained an expert, which prompted the parties to agree on the scheduling order for discovery.  *See* Def.'s Reply at 8.  The government briefly communicated with a potential rebuttal expert but did not reach any substantive details.  Tr. at 69:7–20.  On the day plaintiff's expert report was due, plaintiff notified the government that plaintiff's expert withdrew.  *See* Def.'s Reply at 8.  The government thus ceased preparing a rebuttal expert.  *See* Def.'s Reply at 8.  In addition, plaintiff stated at oral argument the expert witness it considered retaining would have testified on issues unrelated to Mr. Bernert's testimony, so the government's efforts to retain a rebuttal expert are unrelated to the expert testimony Mr. Bernert would offer.[10]  *See* Tr. at 58:18–24.  During oral argument, counsel for the government expressed concern if plaintiff were allowed to reopen expert discovery, then the government would have to re-perform the entire expert discovery process, including procuring and retaining an expert, preparing an expert report, defending the expert's deposition, and re-deposing Mr. Bernert as an expert witness.  *See* Tr. at 69:21–70:11.  The government stated "all of those things in terms of the extensive delay of this case that has already been dragging on for years, as well as the resources in terms of attorney time, as well as financial resources to retain an expert . . . are all the types of things in [*System Fuels*] that go to prejudice to a party."  *Id.* at 70:12–18.  The government also noted the parties

---

[10] Plaintiff conceded the nature of its proposed expert witness at oral argument:

> MR. BOWSER:  [Plaintiff] wasn't getting an expert for the unusually severe weather because they believed that Mr. Bernert would be able to do that . . . .  [Plaintiff instead attempted to retain an expert] about the means and methods that were planned to be used for the dredging itself, *a completely different issue*.

Tr. at 58:18–24 (emphasis added).

would need to resubmit summary judgment briefing if plaintiff could reopen discovery, while "this entire case is in front of [the Court] for disposition." *Id.* at 78:6–7.

Even assuming the government is familiar with Mr. Bernert's testimony from his interrogatories and two days of deposition, the government did not prepare for Mr. Bernert's testimony in an expert witness context. *See* 67:24–68:13. As the government's counsel stated during oral argument, if Mr. Bernert were designated as an expert witness, the government would have deposed him "by exploring his qualifications with regards to these particular opinions, by exploring the means and methods that he went through to reach his conclusions," which are "not the kinds of things that [an attorney] would ask a fact witness who has simply verified a set of interrogatories and you're asking about the parties' position as reflected in those interrogatories." Tr. at 68: 1–13. The government's familiarity with Mr. Bernert's testimony does not mitigate the undue expense and time the government would have to devote to a re-opened expert discovery schedule. *See 1488, Inc.*, 939 F.2d at 1289 (upholding a district court's decision not to modify the discovery schedule when the moving party "failed to provide an adequate explanation for [its] failure to identify its expert within the designated timetable" because such a modification "would have entailed additional expense to the [nonmoving party] and further delayed its day in court"); *Sys. Fuels,* 111 Fed. Cl. at 384 ("[T]he Government would need to investigate [the proposed expert witness's] assertions and might need to hire a new expert. . . . [T]he court sees no reason to impose the burden of any additional discovery on the Government."). The potential prejudice in allowing the testimony favors the government.

### 4.    The Availability of a Cure for Prejudice

Plaintiff offered to "forgo any additional briefing" and "depositions or anything else for that and supplemental briefs" as cure for the prejudice against the government resulting from amending the schedule by reopening expert discovery. Tr. at 80:4–11. Plaintiff addressed the government's concern about the need to rebrief for summary judgment by arguing "[plaintiff does not see] that we're going to require any additional briefing to go in. The Government can file a supplemental brief to the extent that it thinks it's applicable." *Id.* at 79:2–7.

Even if the Court adopts plaintiff's proposed cure of allowing only the government to file additional briefing regarding expert discovery, "the [C]ourt cannot compensate the [g]overnment for the added expense it would incur" to retain an expert or for the additional attorney hours it would have to spend on expert discovery. *Sys. Fuels,* 111 Fed. Cl. at 384; *see 1488, Inc.*, 939 F.2d at 1288–89 ("[Even where] the degree of prejudice suffered by the plaintiff due to the late designation of an expert would not have been great, a [trial] court still has the discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order."); *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005) ("Compelling a party with 'clean hands' to incur significant additional expense and spend a large amount of additional time in discovery when the opposing side has not acted with diligence and has not shown 'good cause' is simply unwarranted."). Plaintiff's failure to designate Mr. Bernert as an expert was due to its misapprehension of the law, which cannot justify imposing an extra burden on the government to redo expert discovery over twelve months after the original deadline for completion of expert depositions and over fifteen months after plaintiff agreed to provide the government its expert report. *See id.*; Joint Status Report, ECF No. 69 (jointly proposed dates

requiring plaintiff to provide its expert report to the government on or before 9 September 2019 and closing the expert discovery window on 6 December 2019).  The availability of a cure for prejudice favors the government.

Given plaintiff's failure to designate Mr. Bernert as an expert witness due to its misapprehension of law for over seven months after the expert discovery window closed and nine months after plaintiff's expert witness reports deadline, the importance of Mr. Bernert's testimony to plaintiff does not outweigh the prejudice sustained by the government, and the lack of an available meaningful cure for the government's prejudice, no good cause exists for plaintiff to reopen discovery and designate Mr. Bernert as an expert witness.  *See* Rule 16(b)(4) ("[A] schedule may be modified only for good cause and with the judge's consent."); *Advanced Software Design Corp.*, 641 F.3d at 1381 (holding a district court did not abuse its discretion in finding a party failed to show good cause for a four-month delay "[u]nder the good cause standard, [where] the threshold inquiry is whether the movant has been diligent."); *1488, Inc.*, 939 F.2d at 1289 ("A continuance might have cured any prejudice arising from the [moving party's] late designation, but such a remedy would have entailed additional expense to the [nonmoving party] and further delayed its day in court."); *Sys. Fuels*, 111 Fed. Cl. at 384 (denying plaintiff's motion to designate a proffered witness as an expert 11 months after plaintiff's deadline but before the close of the government's expert discovery because "the Government would need to investigate [plaintiff's new expert's] assertions and might need to hire a new expert," and while "discovery deadlines can be extended, the court cannot compensate the Government for the added expense it would incur").

## VII.    Conclusion

For the reasons set forth above, plaintiff's motion to strike the government's objections is **DENIED**.  Plaintiff's objection to the government's exhibits for lack of authentication is **DENIED**.  The government's request the Court disregard inadmissible statements is **GRANTED** as to Paragraphs 4E and 5–12 of Joseph Bernert's Declaration.  The Court further will not consider Declaration statements taken from Exhibit H, Interrogatory No. 9, and any other statements in Exhibit H containing analysis of weather patterns and sediment content not based on personal knowledge.  Plaintiff's motion to designate Joseph Bernert as an expert is **DENIED**.

No later than two weeks after the date of this Order, **on or before 12 January 2021,** the parties shall submit a joint proposal as to the need for supplemental and final summary judgment briefing, proposing specific page limits and filing deadlines.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge